**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRUCE E. FOX, d/b/a Fox Media,
Plaintiff-Appellant,

v.

WILSON TELECASTERS, INCORPORATED;

No. 98-2082

CHANNEL 30 ASSOCIATES LIMITED
PARTNERSHIP; ROBINSON O. EVERETT;
KATHRINE R. EVERETT, Estate of
Kathrine R. Everett,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.

(CA-97-630-5-BO)

Argued: June 10, 1999

Decided: July 12, 1999

Before WILKINSON, Chief Judge, and ERVIN
and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Jeffrey Mark Young, MOORE & VAN ALLEN,
P.L.L.C., Raleigh, North Carolina, for Appellant. Kenneth Matthew
Vaughn, EVERETT, GASKINS, HANCOCK & STEVENS, L.L.P.,

Raleigh, North Carolina, for Appellees. **ON BRIEF:** Hayden J. Silver, III, MOORE & VAN ALLEN, P.L.L.C., Raleigh, North Carolina, for Appellant. Hugh Stevens, EVERETT, GASKINS, HANCOCK & STEVENS, L.L.P., Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bruce E. Fox is a broker who specializes in the sale of television stations. He was retained by the owners and operators (the "Sellers") of WRAY-TV 30 to act as a broker for the sale of the station. The station was ultimately sold to a buyer located by another broker, also engaged by the Sellers. Fox contends that he is owed a commission on the sale of the station, and he sued the Sellers **1** to recover it. The district court granted summary judgment for the Sellers, and Fox appeals. We affirm.

I.

On July 6, 1995, Robinson O. Everett (on behalf of the Sellers) and Fox signed an Exclusive Listing Agreement for the sale of WRAY. The agreement provided that Fox was to serve as the Sellers' "exclusive agent for the purpose of arranging an acceptable sale or business transaction of television station WRAY-TV 30." The agreement was to run for a "minimum period of sixty (60) days from the date of execution," subject to "any extensions that may be agreed to." However, it provided that "[t]his exclusive agreement can be cancelled [sic]

_____

**1** Specifically, Fox named the following as defendants: Wilson Telecasters, Inc., Channel 30 Associates Limited Partnership, Robinson O. Everett, and the Estate of Kathrine R. Everett.

after sixty (60) days for any reason by Seller." Fox would be entitled to a commission if (1) a sale closed during the term of the agreement due to the efforts of Fox; (2) a sale closed within twelve months of the expiration of the agreement to a person with whom the Sellers had contact during its term; or (3) a sale closed within twelve months of the expiration of the agreement to a person with whom Fox had contact during its term.

After the July 1995 agreement was signed, Fox contacted a number of potential buyers but was unsuccessful in his efforts to sell the station. In August 1995 Fox enlisted the help of John Tupper as "co-broker," giving him confidential information about the station to pass along to potential buyers. The parties dispute whether Fox informed the Sellers of his arrangement with Tupper or sought their permission to engage him. In any event, by the end of the year Fox still had not found a buyer for WRAY. On December 28, 1995, Everett wrote to Fox. His letter said:

> As 1995 draws to an end, I believe that it is time to take WRAY and WFAY[2] off the market and pursue some of your ideas about building up these stations before offering them again for sale. . . .
>
> We will count on you to communicate with the various prospective buyers you have listed with us to notify them that these stations are no longer for sale. Also, in order to assure that your rights are protected for the period of time provided by your listing contract, I would appreciate your submitting by FAX a complete list of the registered buyers as to whom you wish protection if there were a sale to them.

Shortly thereafter, Fox responded by sending Everett a list of all the potential buyers he had contacted in the effort to sell WRAY.

Fox and Everett continued to communicate with each other in early 1996. However, in the Spring of that year, the Sellers engaged another media brokerage firm, Blackburn & Co., to look for potential buyers

_____

**2** The sale of WFAY was not at issue in this litigation.

for WRAY. Blackburn soon identified Global Shopping Network as a prospect. At about the same time, Tupper, Fox's co-broker, also contacted Global. Upon hearing of this, the president of Wilson Telecasters, Inc. (a co-owner of WRAY) informed Global that he had never heard of Tupper and that Global should deal only with Blackburn, which had the exclusive listing for WRAY. Global bought the television station in March 1997, and the Sellers paid Blackburn a commission of about $192,500.

Thereafter, Fox filed this suit to recover a commission on the sale of the station. He asserted claims for breach of contract and quantum meruit. The district court granted summary judgment for the defendants (the Sellers) on both claims. It concluded that Everett's December 28, 1995, letter to Fox terminated the listing agreement and that the subsequent communications between Everett and Fox did not create a new contract. The court also concluded that the quantum meruit claim failed because Fox could not show that his actions were the direct cause of the sale of the television station to Global. Fox now appeals.

II.

After considering the parties' briefs, the arguments of counsel, and the joint appendix, we conclude that the district court correctly decided the issues before it. Accordingly, we affirm on the reasoning of the district court. See Fox v. Wilson Telecasters, Inc., No. 5:97-CV-630-BO(1) (E.D.N.C. July 10, 1998).

AFFIRMED

4